BSM, Gabriel M, Appellants v. Upper Darby School District Dan Woody on behalf of the Appellants, Brooklyn and the family. How old is Brooklyn and what grade is she right now? Brooklyn is now in seventh grade and she is 13 years old. What school is she in now? Unfortunately, she is no longer in the Upper Darby School District. She did fifth grade in Upper Darby, but after fifth grade, her mother had to pull her out and put her in a private school. She never ended up getting an IEP. She did have a Section 504 plan for fifth grade, but it wasn't working. The mother had to pull her out and put her in a private school for middle school. And your argument essentially is that, while there is considered by courts to be overlap between the IDEA and 504, in reality, it's not complete overlap. They're independent. That's absolutely right, Your Honor. So what we're here today is to determine whether or not Section 504 is subsumed entirely by the IDEA or whether or not there's daylight that exists between the two statutes. All right. Is there evidence in the record that supports a 504 claim that wouldn't support an IDEA claim? Does the difference between the two statutes matter here? Absolutely. So the answer to both of those questions is yes. The difference between the two statutes, there are not many differences between the two. One of the primary differences between the two statutes is the definition of disability. IDEA has a specific enumerated list of disabilities, 13 disabilities, and those disabilities have to require specially designed instruction, meaning a modification to the child's education. And if you meet one of those 13 categories, and if the school district has to change the child's curriculum, modify the child's curriculum, then the child is disabled under IDEA. Section 504 predated IDEA. It has a much broader definition of disability. That is one of the primary distinctions between the two. And what we're here today is to apply that definition. That definition would not be in Section 504 if it didn't have any need. So what evidence of the record suggests that your client might have difficulty, might have loss below something like that under the IDEA where the broader scope of disability under 504 matters? So there is a lot of evidence, Your Honor. I could go through from kindergarten to fourth grade. I'm happy to do that. So just give us some label. What disabilities of hers might not fit in the IDEA that are just going to be covered by the broader language about physical and mental impairment? Yeah, and to put a point on that, your opponent says in their briefing, there's no evidence predating 2021, I think is what they say, that indicates that there was something else going on here other than the IDEA qualifying stuff. Your Honor, with respect, that question assumes a determination was made as to whether or not the child has a disability. That question presumes that we are attacking the school district's finding that she did not have a disability under Section 504. But what's different here is no determination was ever made. Well, wait a second. And this is, I think, important because it goes to, I believe, it goes to what Judge Vivas is asking. It's what I want to ask, too. The JM case seems to say pretty clearly that if you don't have any additional evidence to support a 504 claim, I think the way the court put it was, depending on the factual basis for the denial of fape claim, legal differences may be of no moment. And that in that case, they, quote, offered no additional evidence in support of a 504 claim. So under our precedent, it looks like if you want a separate 504 analysis, you have to have shown the court there's a reason to do a separate 504 analysis, that you would, as Judge Vivas put it, there'd be some basis for a 504 analysis. So tell us what was in the record to show the district court, hey, you should have done this 504 analysis. Because there is evidence that was in the record to support an independent 504 claim. Of some disability that might not fall within this list of 13 under the IDEA. Absolutely. So I'm going to answer that question directly because Judge Vivas asked it and you've asked it and I don't want to overlook the question. But I do want to go back to JM for a second after I answer the question. You can go back to JM. But start by answering our question. So when the child was in kindergarten. Do in the order we want. Give us the evidence. Absolutely. When the child was in kindergarten, her report cards say that she needed improvement in attention and that she was below basic or well below benchmark in reading on her overall composite scores for the dibbles. But she ended up getting speech language instruction because that's a classic IDEA thing, isn't it? You're delayed in speech and reading. That is. It is a classic IDEA disability and it highlights the difference between the definitions of disability. She got an IEP for articulation issues, which is a subset of a subset of a disability within IDEA. That's what her IEP was for. It was just for articulation. Is attention something that doesn't necessarily fall within IDEA, like an ADHD type claim? Absolutely. So under Section 504, you can be considered disabled under 504 if you have any kind of physical or mental impairment which affects any major life activity, not just education, not just learning.  Standing, lifting, bending, speaking, breathing. But ADD or ADHD, either one does affect educational performance, does it not? It absolutely does. So then it's a specific learning disability, which is one of the 13 enumerated ones. Right. An ADHD is not a specific learning disability. Usually that's under what's called other health impairment within IDEA. Okay. Well, then that's under other health impairment. Well, that's one of the 13 enumerated ones. So long as the ADHD requires the school district to change the child's curriculum, then the child would have a disability under IDEA. Okay. In that case, then, both the attention ADHD and reading issues fall within one of the 13 categories of IDEA. So give us something else in the record where there's at least a real question of whether it falls under the IDEA but might be caught by the broader language of 504. Absolutely. So staying in kindergarten, her curriculum-based assessments in math show that she was below basic and basic across her curriculum-based assessments in math in kindergarten. In first grade, she was below basic in math, and she was basic in reading on her MAP assessments, which are a benchmark assessment that are given to all the children. Still in first grade, she was consistently below or well below basic on her DIBLS reading assessments while in first grade. In second grade, she had basic scores in reading and math. And mind you, in kindergarten and first grade, she was not comprehensively evaluated for a Section 504 plan or an IEP. But she was independently evaluated in February of 2019. I'm assuming this Child Guidance Resource Center evaluation was something that the parents went out and got? Correct. And that it emerged from that that she had expressed some suicidal ideation? That's correct. That occurred. Was that information relayed to the school district? The parents testified that it was relayed to the school district. And these questions, while extremely, extremely important questions, these are getting into issues of fact, and this is a question of law because the district court held that it was unnecessary to do the analysis right now with that the panel is doing. Well, hold on a second. Mr. Woody, to know whether it's necessary to do it, you have to know whether there was some evidence, right? Would you admit that if you had no evidence in the record at all of anything that would qualify as a disability under 504, independent of those enumerated categories under the IDEA, that our ruling in JM would say the district court was correct, no 504 analysis was needed? If there's absolutely no evidence that the child has a disability? Absolutely. Outside of the IDEA? Yeah, absolutely. Okay. So when you say now you're getting into facts, we have to get into what your evidence was because to know whether the district court erred in not doing a 504 analysis, we have to know whether you put something in front of the district court that would indicate to the district court that a 504 analysis was needed. So that's why you're being asked these questions. It's not purely a legal question. It's a legal question that depends on what you put in front of the district court. So the question being put to you is, did the district court have information showing that, for example, in February 2019, Brooklyn was having suicidal ideation? Yes. Okay. And is suicidal ideation something that would fall outside of the IDEA's definition of a 504 analysis?  And is that something that would be a serious emotional disturbance or other health impairment? It could be, yes. It could be because it might not require modifications to the curriculum. But it might require accommodations for the child so the child has access to curriculum. Section 504 is much more basic. Okay. In September of 20, there's another independent or private evaluation that parents get. I believe it's by GEMMA Services. That's the diagnosis of disruptive mood dysregulation disorder. Correct. Is that social and emotional issue and problem related to the school district? Absolutely. Yeah. Yeah, absolutely. But let's go back and look at some more of the evidence that the school district had in front of it to perform the Section 504 evaluation, which they never did. In third grade, the parent voiced concerns to the school district about emotional issues. As a result, and that's not just the parent's testimony. That's a finding by the hearing officer. It's a finding by the district court that in third grade, the parent expressed these emotional issues. Did the kindergarten teacher also say something about her attention and behavior? Yes. She expressed her self-control, as well as that she needed improvement in attention during instruction, and verbal and physical self-control in kindergarten. And no evaluation was done in kindergarten. No evaluation was done in first grade, second grade. In third grade, when the third grade teacher referred her to the social worker, and the third grade teacher testified at the due process hearing, I thought she was getting weekly counseling with the social worker for emotional issues. No evaluation was performed. Which brings up, you had this heard before a hearing officer. Correct. And you go to the district court, and then you come to us. What is the standard of review that the district court should adopt? Should it be de novo or the so-called modified de novo that you see in the Rowley case? So it should be de novo, Your Honor. But unfortunately, I don't believe the panel is going to be able to reach that issue, because this is an error of law. This is a situation, unlike JM. In JM, the child entered the school in first grade. In first grade, the child had two comprehensive evaluations under IDEA and Section 504 to determine whether or not the child had a disability. Two determinations were made. That's what the court was examining. In second grade, the child had two more evaluations performed, and that is what the court was examining. Here, there were no determinations made. We can't criticize the school district's evaluations because they never happened, and the district court held it was unnecessary to even apply the plain language of Section 504. Section 504 has a broader definition of disability. Gotcha. If it didn't, if it wasn't supposed to be, if they weren't supposed to have differences, then an IDEA under 20 U.S.C. 1415L, where it states that the rights and protections of the Rehabilitation Act are to be preserved. Okay, let's grant that, and let's grant that if one of those differences in coverage matters, then the different child filing obligation might apply. Let's circle back to JM. How do you deal with the last two paragraphs of JM? So the reality is that in that case, there was four comprehensive evaluations done of the child between first and second grade. Here, there were zero evaluations done until fourth grade, and the hearing officer and the district court held that it was unnecessary to perform a child fine analysis under Section 504 because the child was ineligible under IDEA. Those two things don't add up. They have different definitions of disability. Every child who is- Well, you've got to address this language. This case is not necessary to analyze whether 504 may be brought as a companion. That is so because CM's parents do not succeed under denial of fate claim, and they offer no additional evidence in support of their 504 claim. So, are you telling us that we did offer additional evidence, and that's sufficient to show that a 504 analysis should have been done? There's two answers to that. One, we can't bring it as a companion claim because there was no evaluations were performed at all. In JM, there were four evaluations done. Here, there were zero. You've got to- So, let's get back to- I just lost you, Mr. Woody. Okay. Are you saying- I thought your argument was they denied her the free appropriate education that she's entitled to, and that denial of fate wasn't just based on things covered by the IDEA. It was based on discrimination that's outlawed by 504, and here's our evidence for why it was not subsumed, why even under JM, the court was obligated to do this. Now, what you just said sounded different to me, and you've got to help me out. Is your argument instead, no 504 analysis was ever done, and that's why this is different than JM? That's the thing that makes it legally distinct? Well, it's both, Your Honor. Because in JM, it doesn't look to me like that's what mattered. When I read JM, what looks like what matters is you didn't show a basis for a 504 claim independent of the IDEA claim. That that's the whole ball of wax. Where am I wrong? Where am I going off the beam? Because in JM, there were four evaluations done, comprehensive evaluations. But the court didn't say that's the basis of decision, did it? It necessarily had to, because in that case, the parent had to bring it as a companion claim because there were four evaluations done of the child over two years. So you're saying it makes it, you couldn't, you think this, the companion claim versus independent claim, that is, that's a sink or swim point for you. You can't win unless you make that distinction. Well, I'm obviously here to, I'm not here to ask you to overrule, do what you can't do, which is overrule JM. What I'm asking you to do is not broaden the holding of it. See, the difference in JM is that there were multiple evaluations done of the child. In this case, there were no evaluations done. Isn't the big difference in JM that the plaintiffs, the courts of the plaintiffs didn't present any evidence unique to the Section 504 claim? Correct, because the evaluations were before JM. Did you present evidence that is unique to the Section 504 claim? There, yes, because there is, so we had gotten the third grade when I was talking about this, the child being referred to the social worker. We had, there was evidence in kindergarten, first grade, second grade, and third grade. What is the evidence? The evidence of the child's academic needs and attention needs in kindergarten, academic needs in first grade, academic needs, emotional needs in second grade, being referred to the social worker in third grade. All of those things were, all of those things put the school district on notice. Where is the evaluation? Those are all needs, and the needs language is from the IDEA. Section 504 regs talk about testing that's geared to the aptitude or achievement letter. Is there a level, is there daylight between those two in the context of this case? The, when we're talking about a disability in the context of Section 504, and correct me if I misunderstand your question, the, you have to look at any kind of major life activity which could be affected by a disability. And, and so I would think of the word need and disability sort of interchangeable in that regard. Okay, because I just do notice that they use different language. The CFR reg on Bible forces, specifically the testing is not supposed to reflect the disability. It's supposed to be about aptitude or achievement or what, what can this person, what is this person capable of doing and what is this person achieved? So there might be a difference between those two, but maybe it doesn't make a difference here. It certainly doesn't make a difference in the context of, of narrowing it down to just learning and achievement, if that's what your question is. Because it, so the Section 504 definition of disability plays off of the Americans with Disabilities Act definition. It not plays off of it, is it? And that's the, that's that long list that I provided earlier, which is caring for oneself, performing manual tasks, tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking. Any of those things are affected. Then the, then the individual has a disability under the ADA and thus under Section 504. So we, we went through all of that evidence. I realized my time's been up for quite some time. Right. And let me just interrupt for a moment and I'll let you wrap up. I, did you, had you reserved time for a bottle, sir? Yes. Five minutes. Yeah. And just, just one more, one more point that I think that, that goes to the, the concerns you were, you were, you were raising about JM is if you look at the decision of Cully versus Cumberland Valley School District is a, is a, a 20, 2018 opinion by, by Judge Ambrose. In that, in that opinion, there is a, is automatically suspect. We don't pay attention to him. Well, you know, I would like you to make an exception for this, for this one case. In, in it, in it, in it, the judge does a, a specific analysis under Section 504 as to whether or not the child's Crohn's disease, it, whether or not the school district violated its child fine duty under Section 504, independent of IDEA. Okay. Let me ask one last thing and then we'll have you see the podium. What is it precisely that you're looking for now? What's the relief that Brooklyn, you think Brooklyn is entitled to and ought to have? Well, at this stage of litigation, Your Honor, we're looking for it. We're asking for a remand for the district court so that the, so that the district court can apply Section 50, the plain language of Section 504, which states there is a child fine obligation under Section 504. And, and what would be, like, what's the end game? Well, at this stage, the end game is unchanged from the hearing. It's just compensatory education. Okay. You're not taking damages? Oh, absolutely not. Okay. No, no, no, no, no. Under, under Section 504, we'd have to be proving intentional discrimination for, to get, to get damage. This is an equitable relief case. This is for compensatory education, not for damages. Okay. And, and the equitable relief would be, now that she's in another school, what? So, the equitable relief would, would be what we call compensatory education, which is the services that she never got from kindergarten to, through fourth grade. The, the services, she should have had a 504 plan. The school district was on notice to this, a litany of needs, but never did an evaluation. And, and they would need to, they would need to provide the funds for her to get those services. Correct. Okay. Absolutely. All right. Understood. Thanks, Mr. Weaver. We'll have you back on redirect, excuse me, on the rebuttal. May it please the court, Beth and shore on behalf of the upper Darby school district. And I apologize for the state of my voice, getting over a cold. Okay. Sure. Why don't you dive right in here? Close to where we were leaving off with Mr. Woody and help us understand why if, if the school district is on notice as early as kindergarten, that this child has self-control issues and that that's reconfirmed in later grades, culminating in a diagnosis of somebody who's got the precise terminology is escaping me at the moment, but a disruptive mood dysregulation disorder, a child that's evidently seriously depressed. Um, um, what, why is it that, uh, the district court was able to say, you know what? I've looked at it under the ADA. I mean, under the IDA and that's, that's good enough. Five Oh four. There's nothing, nothing to see here. Move along. Um, why is Mr. Woody wrong that there's an independent basis and an independent evidentiary basis that would require, should have required the district court to look at five Oh four. I believe that, uh, respectfully, I believe that Mr. Woody is mistaken. I think that the third circuit was clear in JM that there isn't a, a need to do an independent analysis of five Oh four claims where the same universe of facts underlying the five Oh four claim also underpins the IDA claim. JM is not written as a broad holding. We therefore hold that this assumes it may be on those particular facts. There wasn't, but your friend on the other side, Mr. Woody points out suicidal ideation doesn't look like it's covered by the IDA. Why doesn't the fact that there is a, something that's clearly covered by five Oh four that might not be covered by IDA mean that, that the courts ought to go and check both boxes. Cause there's separate statutes. Your honor, essentially in these types of claims, when parents are making a deprivation of faith claim or an alleged child violation claim under any type of disability that would fall under the IDA, the parent will almost always also file a claim under section five Oh four. And that's what occurred here. And maybe that's a clarification that needs to be dealt with by, by courts, specifically our court. But in JM, the student was eligible for under IDEA as well as L was eligible for a five Oh four evaluation. Here, the person was not eligible under the IDEA. And found only eligible under five Oh four. Doesn't that distinguish JM? I don't believe it does judge. And the reason why is because if we look at J, if we look at the back. Okay. You finish and then I'll, I'll follow up. I'm sorry. You can go. Go ahead. The point is, all we have here is a lengthy footnote on page 21 of the judge's opinion that sort of refers back to some of the other things that were said before. But doesn't, this appears to be really a five Oh four case dealt with as an IDEA case. With a sentence at the end of the footnote that doesn't give us any specifics. Exactly. I do not believe that this was ever a five Oh four case. And if you. The hearing officer evidently thought it was. Well, I recognize because there was a claim raised under section five Oh four. The hearing officer had to address that claim. But at the end of the day, the gravamen of the parent's complaint before the hearing officer and in fact, before the district court was that the school district had failed to properly identify Brooklyn for services under the IDEA. Well, no, they said under IDEA and five Oh four. And they've consistently take that, took that position. The hearing officer agreed that there was a basis for a five Oh four claim. So there wasn't an IDEA claim. So why isn't that? Why doesn't JM actually support their position here? Five Oh four is its own child find requirement. It does. But in JM, the circumstance was that the parents in that case had alleged that the school district had failed in its child find obligations because they had not identified that child with autism. And the, and the, the parent in that case raised their child find claim under both the IDEA and under section five. Hearing officer here found for the student, correct? On the section five Oh four plan being inadequate. Yes, correct. So how is that not a five Oh four claim? There is a five Oh four claim. And I, I didn't want to, and it has to be logically, it has to be independent of the IDEA claim. Unless the hearing officer was just dead wrong. Cause the hearing officer said, you don't have an IDEA claim. You do have a five Oh four claim. But when cases have the same universe of facts and are as is the case here, they are the five Oh four claim can and should be analyzed in conjunction with the hearing officer or the court's analysis of the IDEA. Are you saying the hearing officer was wrong? No, I don't believe so. Okay. So if the hearing officer wasn't wrong, then the hearing officer necessarily found that the, the disability here being alleged by Brooklyn and her family was sufficient to qualify under five Oh four, even if it didn't qualify under IDEA. Isn't that the necessary conclusion from the, from the hearing officer's statement that you do not have an IDEA claim, but you do have a five Oh four claim. Judge Jordan, that determination though was only with respect to her eligibility as the district had identified it for the 2021 school year. The hearing. You can try to limit it however you want, but the point is you, I think you have to acknowledge that both as a legal matter are our cases say five Oh four and IDEA are not coterminous. Five Oh four is broader, right? Yes. And you have to acknowledge that in this case, in fact, the hearing officer looked at this child and said, I don't think you qualify under IDEA. I think you do qualify under five Oh four. So the, the hearing officer having heard all the evidence said you're in the zone of non overlap. You know, we're doing a Venn diagram. You're on the part of the five Oh four that doesn't overlap with IDEA and you've got a claim, right? Correct. Yes. Okay. So how can it be proper under those circumstances for the district court to say, I don't have to look at five Oh four. I don't have to look at it because I've looked at IDEA. I don't think that the, that the district court said that they, that, that she did not look specifically at five Oh four, but that all of the facts that were presented before her in the record did not. Five Oh four analysis by the district court, right? The district court said there's an IDEA analysis. That's good enough. The five Oh four analysis is, it's, it's in there. It's like ragu. It's the, it's in the sauce. I already did it, right? That's accurate. Yes. Basically what I said before with respect to the IDEA applies here, but even if I had to apply it here, you have a throwaway sentence at the end. I'm sorry. I didn't hear that. And footnote five is the very last sentence as Judge Bevis pointed out. It says that even if a separate five Oh four child analysis was necessary, were necessary, the district discharges obligations because as discussed above, the district timely evaluated Brooklyn for suspected disabilities in a thorough manner. Yes. I'm sorry. What, what is the question? So I'm about as lost as you are on this. To what extent did the district judge here actually give independent consideration to the differences under five Oh four from, from the IDEA? I believe it's like the judge considered them to be substantially so that the deal with the IDEA is to decide five Oh four, but it sounds like from our discussion, that's not really correct. Is it? I read this part of the court's opinion to mean that because the facts were so inextricable and the same set of facts for both claims, because the court had determined that the district had timely evaluated the student over time under the IDEA, the court was also finding that the district had timely and appropriately evaluated the student under section five Oh four. Is, is there, is there evidence in the record that Brooklyn had social addiction? Adjustment, behavioral problems in kindergarten? No, not, not evidence that the evidence in the record discusses that she had some challenges as a kindergartner, but nothing that rose to the level where the district even believed that it needed to evaluate her. That's, that's the point. That's the, that's their complaint. The kindergarten teacher says, in effect, your kid can't sit down and do the work. Your child has self control issues and the school district says, well, that's not bad enough. And they say, no, you should do an evaluation. There should be a comprehensive evaluation. The school district says, no. And the second, and there's, that's the, that's the whole, speaking of the gravamen of the complaint, that is the gravamen of the complaint. Since kindergarten on, we were saying, get this, give her an evaluation. She's got problems. She deserves help. And you would evaluate for this narrow slice of IDEA, this narrow slice, but you would never give a comprehensive evaluation until she was in the fourth grade. And that's their, that is their, their argument. So, if that's, under those circumstances, how could the, why was it correct for the district court to say, I'm focused on IDEA here, conclude that the IDEA wasn't satisfied and then say, I don't have to, in effect, I don't have to look at 504 because I've done IDEA. How does that need to square up logically with what happened here? In other words, it sounds like the judge is doing something as if there were a complete mapping of one unto the other, but we now know that's not the case. Well, I think that it's important to come back to the fact that under both the IDEA and section 504, a school district's obligation to, to assess a student under its child find obligations is if they're on notice of a behavior that is likely to indicate a disability. The student's conduct in kindergarten, quite frankly, sounds similar to the conduct of lots of kindergartners and the educational professionals in the school district at that time had determined it was not a behavior that in their mind rose to the level of requiring an evaluation. That's why there's an administrative process. That's why there are hearing officers and all that happened here. Right. There was a finding that there wasn't an IDEA issue, but there was a 504 issue, but the district court did not analyze a 504 claim. All that is accurate, correct? It is correct. Yes. Okay. One last question. Your colleague on the other side says, hey, you know, we think this is not modified de novo. It's de novo review, but you're not even going to have to get to that. At least I understood him to be saying that. Do you agree or disagree that the standard of review here isn't really an issue because as they put it,  whether an independent 504 analysis was required or not, you know, whether we follow what, for example, Chief Judge Connor said in AW that this needs to happen, or whether we follow the lead that some other district courts have given, where they say you don't have to do it, as in this district court here. Is the standard of review irrelevant to that question? I do not believe it is irrelevant, although my understanding of my adversary's brief was that they were challenging some of the factual findings of the district court, particularly as pertained to whether the parent had ever put the district on notice in 2019 that the student had been identified as having a diagnosis for depression. So if we do have to grapple with the standard of review, and 504 stands as an independent right, it doesn't depend on the IDEA. And in fact, the IDEA is explicit in saying that it doesn't limit any other rights. 504 stands as an independent right, and the claim being made is a 504 claim, then why would we apply a modified de novo review and not the traditional de novo review we would apply when examining a 504 claim? I believe that it is critical that the court apply the modified de novo review because the court has already established that a modified de novo review is appropriate in cases arising under the IDEA. Where you have a case here where the same set of facts spur two claims under the IDEA and Section 504, it would be a disaster, frankly, from a practical perspective if the findings of facts from the hearing officer were awarded deference for the IDEA claims, but not for the 504 claims. Why would that be a disaster if both of those things stand on independent  The IDEA explicitly sets up a system, and by judicial interpretation, there has been this modified standard of review, modified de novo. But if the 504 claim is its own claim, its own independent legal basis, even if it, you know, I'm sure district courts won't be happy with it if we saw it that way, but if Congress chooses, if Congress chooses to give people three different ways to go at a problem, Americans with Disability Act, Rehabilitation Act, IDEA, if the Congress decides to do that and is explicit that the IDEA doesn't swallow them up because it says that, why should it be the case that the IDEA's limited and deferential standard of review trumps the standard of review that would operate with respect to the ADA and the RA independently? In other words, if you just brought an ADA or RA claim without an IDEA claim, what kind of review would you get? I think under that circumstance, de novo would make more sense. Okay. So then Judge Jordan's question is if they're so separate, doesn't the same thing apply here? I don't believe so. Because our circuit has held that that IDEA and Section 504 claims can be handled together. And they often are. But the point is when they're in this case, not eligibility under the IDEA, but a plan is put in place ultimately for 504. Isn't this really just a 504 claim with IDEA not put on the sidelines? I think that this is a, this is not a pure 504 claim. Okay. Okay. All right. Thank you very much. I'm sure we'll go ahead and hear from Mr. Woody. Thank you. Section 504 and IDEA claims are often decided together, but this is a Section 504 case. And so the standard of review should be de novo. The standard of review should also be de novo because this is an error of law, not an error of fact. Here, the difference between this case and JM is in JM, the parent performed two evaluations in first grade. The Scottish performed two more in second grade. And so the court was asking the parent, what other evidence do you have that this child is disabled under Section 504? We can't reach that holding. We can't get there because here, the school district never performed an evaluation in kindergarten, first grade, second grade, or third grade. No, but you did it. You, the parents, did perform evaluations. They got two independent evaluations, right? We did, yes. Yeah. And that evidence was put to the school district? Yes. Okay. So how are you differently situated than JM in that respect? Because there was additional evidence that you argue that you put in, right? I think then because of that, you have to look at Judge Ambrose's decision in Cully versus Cumberland Valley and say, well, why wasn't the Section 504 child find analysis done? Why wasn't an evaluation done under Section 504? And ultimately, that's what you want done here. The opinion you want us to write is, says what? Hey, Judge? Section 504 still exists. 504 required its own independent analysis. And on these facts or just generally? Both. Both. And it doesn't require an interpretation of Section 504 or IDEA. It requires just applying the black and white letter of the law from Section 504. Yeah. It has a different definition of disability. It has its own child find obligation. Can I just ask, did the parties ever, I mean, were there any efforts to resolve this through mediation or otherwise? There always is, particularly in these cases. Myself and my colleague are, there's not too many attorneys to do this area of the law. We know each other well. The idea behind all of these IDEA cases, no pun intended, is constant collaboration. And so we're always trying to work out a resolution of the case. The important thing is that we don't broaden the holding of JM. If we broaden the holding of JM and say that whenever an evaluation is done under IDEA, no matter how belated that evaluation is done, that it always satisfies Section 504, well then we are violating the black and white letter of the law of Section 504. And we are eviscerating the rights and privileges of children with disabilities under Section 504. Here, the parents asked for evaluations in kindergarten, and they did a very, very acute specialized speech and language evaluation to give the child support for an articulation issue. Does the difference between modified de novo and traditional de novo matter here? Under either one, doesn't a legal mistake suffice? Correct. Under either one, a legal mistake suffices. I would like to be able to come up to the panel and try to use this case as an example of why we should have a de novo review under Section 504 as opposed to modified. In my opinion, Your Honor, I don't believe we can get there because this isn't an issue of fact. It's an issue of disregarding the black and white letter of the law of Section 504. It's an issue of the district court in a footnote stating it was unnecessary to do a child fine analysis. If it was unnecessary to do a child fine analysis under Section 504, then Judge Ambrose decided the case wrong in Culley v. Cumberland Valley. It's absolutely necessary. Congress mandated it.  Thank you very much. Thank you, counsel, for argument. We appreciate it. We've got the matter under advisement. We'll recess the court. The court is adjourned.